UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN LEE MORTENSEN, | No. 2:22-cv-01773-DJC-CKD P |
| Plaintiff, | |
| v. | ORDER |
| TARAH FOSTER, | |
| Defendant. | |

Plaintiff is a former county inmate proceeding without counsel. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and is proceeding in forma pauperis. This proceeding was referred to this court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.

Pending before the court are plaintiff's amended complaint and defendant Foster's motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] The court will screen plaintiff's amended complaint and then address the pending motion to dismiss in light of the screening order.

**I.    Screening Requirement**

As plaintiff was previously advised, the court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental

---

[1] Defendant Foster's motion is alternatively plead as a motion for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

1

entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

## II. Allegations in the Amended Complaint

At all times relevant to the allegations in the amended complaint, plaintiff was a prisoner in the Butte County Jail, although he does not indicate if he was a pretrial detainee or if he was serving a sentence. Named as defendants are Tarah Foster, the program manager of medical grievances for Wellpath Medical Group, and eight correctional officers employed at the jail.

At the beginning of his amended complaint, plaintiff states the general legal standard for alleging a civil rights violation and then describes the permanent damage he sustained to his left wrist and arm while in custody.

In his first claim for relief, plaintiff asserts that defendant Foster denied him medical attention after speaking to his doctor as part of reviewing his medical grievance. She also falsely documented treatment that never happened and failed to conduct an investigation into his lack of treatment.

Next plaintiff contends that defendants Hawk and Francesu tried to force him to go back to his housing unit after plaintiff told them that he had safety concerns with other inmates housed there. The amended complaint does not indicate whether plaintiff was returned to this housing unit. Instead, plaintiff's right hand was forced behind his back by defendant Hawk as plaintiff was reaching for a razor blade. During this encounter, plaintiff sustained two cuts from the razor blade. Defendant Francesu was calling plaintiff names and taunting him about using the razor blade to commit suicide.

Defendant Freese did not report the misconduct committed by these officers and allowed defendant Francesu to transport plaintiff to an outside hospital even though he had verbally degraded plaintiff in the past. According to plaintiff, these actions amounted to professional misconduct by defendant Freese.

Next, plaintiff asserts that defendants Hoovey and Agurkis showed deliberate indifference

to his serious medical needs when they reviewed his medical grievances.  Their professional misconduct caused plaintiff permanent physical damage.

Defendant Brownfield opened plaintiff's legal and medical documents on ten occasions in violation of jail policy that requires legal mail to be opened in the presence of the inmate. Plaintiff's mail that was opened concerned staff misconduct complaints filed by plaintiff.

Lastly, plaintiff describes defendant Yee's presence at two of his outside medical appointments.  During the last appointment, plaintiff contends that defendant Yee transported him two hours late for his surgical appointment.  It is not clear whether this appointment had to be rescheduled to a later date.  Plaintiff also asserts that defendant Yee did not tell jail grievance officials the truth about what occurred at plaintiff's outside medical appointments which caused a delay and denial in necessary medical treatment.

### III.    Analysis

Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly.  Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984).  Plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support plaintiff's claim.  Id.

In this case, the allegations against defendant Foster, Hoovey, and Agurkis fail to state a claim because they are all based on their actions performed during the review of plaintiff's administrative grievances.  However, a prison official's action in reviewing an inmate grievance cannot serve as a basis for liability under Section 1983.  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993).

The excessive force allegations against defendant Hawk suggest that he was attempting to maintain or restore discipline because plaintiff admits that he was reaching for a razor blade at the time.  Therefore, plaintiff has not established that defendant Hawk's actions were done maliciously or sadistically to cause harm as required for an excessive force claim.  See Hudson v. McMillan, 503 U.S. 1, 7 (1992).

Similarly, the amended complaint does not state a failure to protect claim against defendants Hawk and Francesu under the Eighth or Fourteenth Amendments because plaintiff

does not indicate that he was ever returned to the housing unit which he feared. Thus, it does not appear that plaintiff was ever exposed to a sufficiently substantial risk of serious harm by other prisoners.

The allegations of professional misconduct against defendants Freese and Agurkis do not rise to the level of a constitutional violation. Violating jail policy or professional regulations do not state a valid federal claim for relief.

The isolated incidents of mail tampering by defendant Brownfield do not include allegations that they were done for an improper motive or resulted in the denial of plaintiff's access to the courts. Thus, they do not rise to the level of a constitutional violation. See Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990).

The claim against defendant Yee is not sufficient to state a claim of deliberate indifference under the Eighth or Fourteenth Amendments because there are no facts indicating that the delay in transport actually caused plaintiff to miss a medical appointment. The amended complaint states that plaintiff was transported to his outside medical appointment, he just arrived late.

Furthermore, plaintiff fails to link defendant Erwin to any of the alleged constitutional violations in the amended complaint. For all these reasons, the amended complaint must be dismissed for failing to state a claim against any defendant. The court will, however, grant plaintiff leave to file a second amended complaint.

If plaintiff chooses to amend the complaint, plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how each named defendant is involved. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to

make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.

**IV.     Plain Language Summary for Pro Se Party**

The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed the allegations in your first amended complaint and determined that they do not state any claim against the defendants.  Your amended complaint is being dismissed, but you are being given one last chance to fix the problems identified in this order.

Although you are not required to do so, you may file a second amended complaint within 30 days from the date of this order.  If you choose to file an amended complaint, pay particular attention to the legal standards attached to this order that may apply to your claims.  An amended complaint should include: 1) the name of defendant(s); 2) the action(s) performed or failed to be performed by defendant(s); 3) the date or timeframe of the action(s); 4) how the action(s) caused injury to you; and, 5) the specific constitutional provision violated by defendant(s).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's first amended complaint is dismissed with leave to amend for failing to state a claim upon which relief may be granted.
2. Plaintiff is granted thirty days from the date of service of this order to file a second amended complaint.
3. If plaintiff chooses to file a second amended complaint, he is specifically directed to indicate whether he was in custody as a pretrial detainee or was serving a sentence at the time of the events giving rise to the complaint.
4. Failure to file a second amended complaint in accordance with this order will result in a recommendation that this action be dismissed.

5.  Defendant Foster's motion to dismiss (ECF No. 19) is stricken from the docket as prematurely filed.[2]  See 28 U.S.C. § 1915A(a).

Dated:  October 25, 2023

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/mort1773.14amd.new+mtd

---

[2] No response to the amended complaint was ordered by the court.  If plaintiff chooses to file a second amended complaint, no response is required unless and until the court screens the amended complaint and determines that plaintiff has stated a cognizable claim for relief that warrants service of process.

**Legal Standards**

The following legal standards are provided based on plaintiff's pro se status as well as the nature of the allegations in the complaint.

**I.      Linkage**

The civil rights statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted). In order to state a claim for relief under section 1983, plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

**II.     Deliberate Indifference**

Denial or delay of medical care for a prisoner's serious medical needs may constitute a violation of the prisoner's Eighth and Fourteenth Amendment rights. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). An individual is liable for such a violation only when the individual is deliberately indifferent to a prisoner's serious medical needs. Id.; see Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000).

In the Ninth Circuit, the test for deliberate indifference consists of two parts. Jett, 439 F.3d at 1096, citing McGuckin v. Smith, 974 F.2d 1050 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc). First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id., citing Estelle, 429 U.S. at 104. "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of

comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez, 203 F. 3d at 1131-1132, citing McGuckin, 974 F.2d at 1059-60.

Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. This second prong is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id. Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "subjective approach" focuses only "on what a defendant's mental attitude actually was." Id. at 839. A showing of merely negligent medical care is not enough to establish a constitutional violation. Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998), citing Estelle, 429 U.S. at 105-106. A difference of opinion about the proper course of treatment is not deliberate indifference, nor does a dispute between a prisoner and prison officials over the necessity for or extent of medical treatment amount to a constitutional violation. See, e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Furthermore, mere delay of medical treatment, "without more, is insufficient to state a claim of deliberate medical indifference." Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Where a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay caused "significant harm and that Defendants should have known this to be the case." Hallett, 296 F.3d at 745-46; see McGuckin, 974 F.2d at 1060.

**III.   Excessive Force**

The Eighth Amendment prohibits prison officials from inflicting cruel and unusual punishment on inmates which has been defined as "the unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is… whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 7

(1992). The court's inquiry into an excessive force claim focuses on the extent of the prisoner's injury, the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7 (1992) (quotation marks and citations omitted). While the absence of a serious injury is relevant to the Eighth Amendment inquiry, it does not end it. Hudson, 503 U.S. at 7. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency in violation of the Eighth Amendment. Whitley, 475 U.S. at 327.

Unlike a convicted prisoner who must bring an excessive force claim under the Eighth Amendment, a pretrial detainee brings an excessive force claim under the Fourteenth Amendment. Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc). To state an excessive force claim, plaintiff must allege that the officer's use of force was (1) deliberate (in other words, purposeful or knowing); and (2) objectively unreasonable. Kingsley v. Hendrickson, 135 S. Ct. 2466, 2472 (2015). With respect to the first element, an officer's negligent or accidental use of force is not sufficient. Id. As to the second element, objective reasonableness turns on the facts of each case, such as "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. at 2473. Objective reasonableness is assessed based on the information known to the officer at the time. Id. at 2474.

**IV.     Failure to Protect**

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotation marks, ellipsis, and citation omitted). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. A prison official may be held liable for an assault suffered by one inmate at the hands of another only where the assaulted inmate can show that the

injury is sufficiently serious, and that the prison official was deliberately indifferent to the risk of harm. Id. at 834, 837. Thus, the relevant inquiry is whether prison officials, "acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." Id. at 834 (internal quotation omitted). To be deliberately indifferent, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

To the extent that plaintiff was a pretrial detainee at the time of the alleged violation, his right to safety arises from the Fourteenth Amendment. Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1067-1068 (9th Cir. 2016) (en banc). A prison official's failure to protect a pretrial detainee is actionable if four conditions are met:

> 1. The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> 2. Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> 3. The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> 4. By not taking such measures, the defendant caused the plaintiff's injuries.

Id. at 1071. As to the third element, the defendant's conduct must be objectively unreasonable. Id.

## V. Mail Interference

Under the First Amendment, prisoners have a right to send and receive mail. Witherow v. Paff, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). However, a prison may adopt regulations or practices for inmate mail which limit a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, (1987). "When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a 'closer fit between the regulation and the purpose it serves.'" Witherow, 52 F.3d at 265 (quoting Thornburgh v. Abbott, 490 U.S. 401, 412 (1989)). Courts have also afforded greater protection to legal mail than non-legal mail. See Thornburgh, 490 U.S. at 413.

Isolated incidents of mail interference or tampering will not support a claim under section 1983 for violation of plaintiff's constitutional rights. See Davis v. Goord, 320 F.3d 346, 351 (2d. Cir. 2003); Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990); see also Crofton v. Roe, 170 F.3d 957, 961 (9th Cir. 1999) (emphasizing that a temporary delay or isolated incident of delay of mail does not violate a prisoner's First Amendment rights). Generally, such isolated incidents must be accompanied by evidence of an improper motive on the part of prison officials or result in interference with an inmate's right of access to the courts or counsel in order to rise to the level of a constitutional violation. See Smith, 899 F.2d at 944.

A prison's interference with legal mail may also violate an inmate's right of access to the courts which is protected by the First Amendment's right to petition the government and the due process clause of the Fourteenth Amendment. See Snyder v. Nolen, 380 F.3d 279, 290-291 (7th Cir. 2004) (discussing the development of cases concerning a prisoner's right of access to the courts). Prison officials may not actively interfere with an inmate's right to litigate. Silva v. Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011), overruled on other grounds by Richey v. Dahne, 807 F.3d 1202, 1209 n. 6 (9th Cir. 2015). In order to state a claim for the denial of access to the courts, a plaintiff must allege he suffered an actual injury, which is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. Lewis v. Casey, 518 U.S. 343, 349 (1996).

## VI. Grievance Process

The existence of a prison grievance procedure establishes a procedural right only and "does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citation omitted); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure). This means that a prison official's action in reviewing an inmate grievance cannot serve as a basis for liability under Section 1983. Buckley, 997 F.2d at 495. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and

watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (citations omitted).